IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Bradley R. Marshall, | Case No. 2:20-cv-2993-RMG |
| Plaintiff, | **ORDER AND OPINION** |
| v. | |
| Ninth Circuit Solicitor's Office, *et al.*, | |
| Defendants. | |

This matter is before the Court on the Report and Recommendation ("R&R") of the Magistrate Judge (Dkt. No. 32) recommending that the Court grant in part and deny in part Defendants Ninth Circuit Solicitor's Office ("Solicitor's Office"), Scarlett A. Wilson, Benjamin Chad Simpson, and Gregory Voigt (collectively, "Moving Defendants")'s motion to dismiss, (Dkt. No. 17). For the reasons set forth below, the Court adopts the R&R as the order of the Court and grants in part and denies in part Moving Defendants' motion.

## I.  Background

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging various violations of his constitutional rights as well as a state law claim.

Plaintiff's Amended Complaint concerns an underlying state court action in which Plaintiff was charged with the unauthorized practice of law ("UPL") in violation of S.C. Code § 40-5-310. (Dkt. No. 12 at 3). Plaintiff alleges that Defendants—including Ninth Circuit Solicitor Scarlett Wilson; Assistant Solicitor Benjamin Simpson; and Assistant Solicitor Gregory Voigt—were required to obtain a declaratory judgment from the South Carolina Supreme Court certifying that his conduct did in fact constitute UPL prior to charging him under the state statute. (*Id.* at 3, 6). In failing to do so, Plaintiff claims that Defendants abused their investigatory and prosecutorial

powers, and violated his constitutional rights under the First, Fourth, Sixth, and Fourteenth Amendments, as well as his rights under 42 U.S.C § 1981 and the South Carolina Tort Claims Act ("SCTCA").

More specifically, Plaintiff claims that Defendants subjected him to unlawful search and seizure, arrest, imprisonment, and malicious prosecution; withheld exculpatory evidence from the state court; and improperly delayed the judicial proceedings. (*Id*. at 3–8).  Moreover, Plaintiff claims that Defendant Wilson "developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of [his] constitutional and federal rights." (*Id.* at 11).  Plaintiff further alleges that the "deliberately indifferent training and supervision" provided by Defendant Wilson also contributed to his purported injuries. (*Id.* at 12). As a result of Defendants' allegedly unlawful conduct, Plaintiff claims that he "has suffered emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages . . . ." (*Id.*).

Moving Defendants moved to dismiss all of Plaintiff's claims against them. (Dkt. No. 17). Plaintiff opposes. (Dkt. No. 28). Moving Defendants filed a reply. (Dkt. No. 31).

On July 20, 2021, the Magistrate Judge filed a R&R recommending that: (1) Plaintiff's claims proceed against Defendants Wilson and Voigt only to the extent the claims arise from the alleged investigation performed by Voigt and supervised by Wilson; (2) Plaintiff's claims against Simpson be dismissed in their entirety; and (3) Plaintiff's § 1983 claims against the Solicitor's Office be dismissed, and only those state law claims against the Solicitor's Office arising from the alleged investigation performed by Voigt and supervised by Wilson proceed. (Dkt. No. 32 at 10).

Moving Defendants filed objections to various parts of the R&R. (Dkt. No. 34).

## II. Legal Standards

### a. *Pro Se* Pleadings

This Court liberally construes complaints filed by *pro se* litigants to allow the development of a potentially meritorious case. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a viable federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. *See Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### b. Fed. R. Civ. P 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." A claim survives the motion if the complaint provides enough facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This is a test of the legal sufficiency of the complaint and, therefore, Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Instead, the district court's "inquiry then is limited to whether the allegations constitute a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted). For that analysis, the district court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"; however, it must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the

complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

### c. Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where the plaintiff fails to file any specific objections, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation omitted). Because the Moving Defendants filed objections to the R&R, the R&R is reviewed de novo.

## III. Discussion

The Court finds that the Magistrate Judge ably addressed the issues and correctly concluded that Moving Defendants' motion to dismiss should be granted in part and denied in part. Namely the Magistrate Judge correctly concluded that: (1) Plaintiff's claims proceed against Defendants Wilson and Voigt only to the extent the claims arise from the alleged investigation performed by Voigt and supervised by Wilson; (2) Plaintiff's claims against Simpson be dismissed in their entirety; and (3) Plaintiff's § 1983 claims against the Solicitor's Office be dismissed, and only those state law claims against the Solicitor's Office arising from the alleged investigation performed by Voigt and supervised by Wilson proceed.

First, Moving Defendants object that all of Plaintiff's § 1983 claims against Defendants Wilson and Voigt should have been dismissed because both individuals are entitled to prosecutorial immunity for their investigation of Plaintiff for UPL. (Dkt. No. 34 at 2-4).

A prosecutor is protected by absolute immunity from liability for damages under Section 1983 "when performing the traditional functions of an advocate." *Kalina v. Fletcher,* 522 U.S. 118, 131, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997). However, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993). Prosecutorial immunity depends on "the nature of the function performed, not the identity of the actor who performed it." *Kalina,* 522 U.S. at 127. Prosecutors are entitled to qualified immunity, rather than absolute immunity, when they perform administrative functions or "investigative functions normally performed by a detective or police officer." *Kalina*, 522 U.S. at 126. The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. *Burns v. Reed,* 500 U.S. 478, 486-487, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991). To qualify as advocacy, an act must be "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976). Thus, a prosecutor enjoys absolute immunity from liability from a suit alleging that he maliciously initiated a prosecution, used perjured testimony at trial, or suppressed material evidence at trial. *Imbler,* 424 U.S. at 430. A prosecutor is also absolutely immune for direct participation in a probable cause hearing, *Burns,* 500 U.S. at 491, and for preparing and filing charging documents. *Kalina,* 522 U.S. at 130. *Buckley v. Fitzsimmons* denied absolute immunity to prosecutors who fabricated evidence "during the early stage of the investigation" when "police

officers and assistant prosecutors were performing essentially the same investigatory functions." 509 U.S. at 273. *Buckley* also denied absolute immunity to prosecutors accused of holding a defamatory press conference, concluding that that activity "had no functional tie to the judicial process." *Id.* at 277. The Supreme Court has also held that a prosecutor does not have absolute immunity for providing legal advice that probable cause exists to arrest a suspect, *Burns,* 500 U.S. at 491, or for personally attesting to the truth of evidence in support of charging documents. *Kalina,* 522 U.S. at 130.

The Court overrules the Moving Defendants' objection. As accurately explained by the Magistrate Judge, at this stage in the proceedings:

> Wilson and Voight have not established that Plaintiff's claims against them are entirely barred by prosecutorial immunity. Specifically, Plaintiff alleges that after a local attorney contacted several agencies in July of 2012 with complaints about Plaintiff participating in the unauthorized practice of law ("UPL"), "Wilson assigned Voigt, who was acting, under the color of state law, to investigate Marshall. Voigt's investigation involved interviews of [the local attorney] and multiple other individuals over a period of months." (Dkt. No. 12 at 3.) This investigation allegedly occurred prior to the execution of a search warrant and Plaintiff's arrest. (*Id.*) Because this alleged conduct implies the performance of an investigative function by Voigt under Wilson's supervision, the undersigned recommends these Defendants are not entitled to dismissal based on prosecutorial immunity.

(Dkt. No. 32 at 7); *see Kalina,* 522 U.S. at 126. And while Moving Defendants argue *Nero v. Mosby*, 890 F.3d 106 (4th Cir. 2018) dictates a different result, the Court finds otherwise.

*Nero* involved the City of Baltimore prosecutor's actions taken in response to the death of Freddie Grey. In *Nero*, the officers were arrested on May 1, 2015. *Id.* at 115. That same day, the prosecutor held a press conference in which she stated that once her office was alerted of the incident on April 12, 2015, her "team worked around the clock; 12 and 14 hour days to canvas and interview dozens of witnesses; view numerous hours of video footage; repeatedly reviewed and

listened to hours of police video tape statements; [and] surveyed the route . . . . " *Id.* While the charges were pending, the officers filed civil suits against the prosecutor alleging malicious prosecution in violation of the Fourth Amendment. The District Court held that the prosecutor "was entitled to absolute immunity for her conduct before the grand jury, [but that] she was not entitled to absolute immunity for any of her actions prior to convening the grand jury." *Id.* at 116-117.

The Fourth Circuit Court of Appeals overturned the District Court's finding and held that absolute immunity applied to all the above actions. In so ruling, the Fourth Circuit reasoned:

> We also reject the Officers' argument that Mosby's *involvement in the investigation of Gray's death strips her of absolute immunity*. Certainly, prosecutors enjoy only qualified immunity for their actions before securing probable cause for an arrest. And Mosby apparently began investigating before she had probable cause. But conducting an investigation is not actionable—in fact, it was Mosby's *responsibility* to investigate—and *the Officers make no specific allegation that Mosby engaged in misconduct during that investigation.*
>
> *To the extent the Officers ask us to create a new rule that participation in an investigation deprives a prosecutor's subsequent acts of absolute immunity, we balk at the proposition.* Such a rule would not only upend the functional approach that the Supreme Court has articulated and applied for decades, but it would effectively eliminate prosecutorial immunity in police-misconduct cases. *Most jurisdictions, including Baltimore, charge prosecutors with independently investigating cases of criminal behavior by police. Per the Officers' theory, whenever a prosecutor takes on one of these cases, her actions—even those intimately tied to the judicial phase—no longer enjoy absolute immunity.* This approach torpedoes the fundamental premise of absolute prosecutorial immunity: ensuring a fair, impartial criminal justice system, in which prosecutors have the independence to hold even powerful wrongdoers accountable without fear of vexatious litigation. And we refuse to sanction it. When determining whether a prosecutor is entitled to absolute immunity, we look at the specific act challenged, not the prosecutor's preceding acts.

*Id.* at 120 (footnotes and internal citations omitted and most emphasis added). As shown above, the *Nero* court did state in passing that an investigation itself is not actionable—a sentence the Moving Defendants emphasize in their objections. This sentence, however, must not be read in

isolation. Instead, when read in context, this sentence refers to the *Nero* officers' attempt to "create a new rule that participation in an investigation [per se] deprives a prosecutor's subsequent acts of absolutely immunity." *Id*. Thus, contrary to Moving Defendants' arguments otherwise, the *Nero* could did not question or call into doubt the above discussed settled case law dictating a "functional approach" to prosecutorial immunity.

Accordingly, the Court overrules the Moving Defendants' objection.

Next, the Moving Defendants object that the Magistrate Judge erroneously found that Plaintiff's state law claims are not timed barred. (Dkt. No. 34 at 4-5).

The Court overrules this objection. As accurately noted in the R&R:

> The SCTCA provides a two-year statute of limitations. See S.C. Code Ann. § 15-78-110 ("any action brought pursuant to this chapter is forever barred unless an action is commenced within two years after the date the loss was or should have been discovered . . ."). Plaintiff initially filed this action on August 19, 2020. (Dkt. No. 1.) The Moving Defendants argue that all of the relevant factual allegations in the Amended Complaint occurred on or before September 17, 2017, when Simpson allegedly "entered a *nol prossed* concerning" Plaintiff's charges. (Dkt. No. 12 at 6; Dkt. No. 17-2 at 6.) Plaintiff contends that the September 25, 2019 Order issued by the Supreme Court of South Carolina marked the moment "the proceedings terminated in [his] favor," and thus his state law claims did not begin to accrue until that date. (Dkt. No. 28 at 11.) The Moving Defendants reply that the Court Order at issue did not constitute a termination in Plaintiff's favor and that the Amended Complaint does not mention this September 25, 2019 Order. (Dkt. No. 31 at 2–3.)
>
> *In short, the parties interpret the September 25, 2019 Order differently, and it is unclear, at this stage in the proceedings the impact of this Order on Plaintiff's claims. Accordingly, the undersigned cannot hold as a matter of law that Plaintiff's state law claims are barred by the statute of limitations. See Williams v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 94 F. Supp. 3d 719, 724 (D.S.C. 2015) ("The dismissal of a complaint on statute of limitations grounds is itself a rare occurrence because '[a] statute of limitations defense must 'clearly appear on the face of the complaint.'" (quoting *Groves v. Daffin*, No. 8:13-00019-JM, 2014 WL 897346, at *2 (D.S.C. Mar. 6, 2014))

(Dkt. No. 32 at 9) (emphasis added). In their objections, the Moving Defendants repeat arguments advanced in prior briefing—namely that the September 25, 2019 South Carolina Supreme Court

Order did not terminate in Plaintiff's favor. *See* (Dkt. No. 34 at 4-5). This objection, however, does not call into question the Magistrate Judge's analysis that the parties ascribe a different significance to the September 25, 2019 Order and that, at this stage, "it is unclear . . . the impact" said order has on Plaintiff's claims. Accordingly, the Court finds no error with the Magistrate Judge's finding that dismissal of Plaintiff's state law claims as time barred would be improper at this moment. Accordingly, Moving Defendants' objection is overruled.

Last, Moving Defendants argue that Plaintiff's state law claims against Wilson and Voigt for their investigation of Plaintiff must be dismissed because of the doctrine of prosecutorial immunity. Moving Defendants argue that the Magistrate Judge inaccurately applied *Williams v. Condon*, 347 S.C. 227 (Ct. App. 2001) and that a correct application of this case would entitle them to dismissal of Plaintiff's remaining state law claims against Defendants Wilson and Voight. (Dkt. No. 34 at 5-6).

The Court rejects Moving Defendants' final objection. As the Magistrate Judge correctly noted, *Condon* explicitly stated that the South Carolina "Tort Claims Act should not be interpreted as displacing the protections guaranteed by the prosecutorial immunity doctrine." *Condon*, 347 S.C. at 247. Considering that pronouncement, and considering the case law discussed *supra*, the Court finds no clear error in the Magistrate Judge's determination that the claims against Defendants Wilson and Voigt should not be dismissed as they pertain to Wilson and Voigt's investigation of Plaintiff. Accordingly, Moving Defendants' final objection is overruled.

### IV. Conclusion

For the reasons set forth above, the Court **ADOPTS** the R&R (Dkt. No. 32) as the order of Court and **GRANTS IN PART AND DENIES IN PART** Moving Defendants' motion to dismiss (Dkt. No. 17). Specifically, Plaintiff's claims in this action shall proceed against Defendants Wilson and Voigt only to the extent the claims arise from the alleged investigation performed by Voigt and supervised by Wilson. Plaintiff's claims against Simpson are dismissed in their entirety. Additionally, Plaintiff's § 1983 claims against the Solicitor's Office are dismissed, and only those state law claims against the Solicitor's Office arising from the alleged investigation performed by Voigt and supervised by Wilson shall proceed. Moving Defendants' motion is otherwise **DENIED.**

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

August 24, 2021
Charleston, South Carolina